JUDGE BAER

07 CV 3086

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEI LICENSING, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>v.<br><br>PERFUME NETWORK, a New York corporation; MAJOR PERFUMES, INC., a New York corporation; TRADE PLUS, INC., a New York corporation; HARBANS LAL GERA, an individual; and BHARAT GERA, an individual,<br><br>            Defendants. | CIV. ACTION NO.:<br><br>**DECLARATION OF GERI L. MANKOFF IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |

I, Geri L. Mankoff, of full age and under penalty of perjury, declare and state as follows:

1. I am the Vice President and General Counsel - I.P./Licensing for PEI Licensing, Inc. ("PEI"). I make this declaration in support of Plaintiff PEI Licensing, Inc.'s ("PEI") Motion for Order to Show Cause for Preliminary Injunction. The information set forth herein is based upon my personal knowledge and/or review of documents and records, and I could competently testify thereto if called upon to do so.

2. PEI owns all right, title and interest in and to, *inter alia*, the following federal registrations for the 360° trademark in connection with fragrances and personal care products for men and women, including perfumes: (a) Registration No. 2,729,330 for 360° and (b) Registration No. 2,324,681 for 360° PEI. Annexed hereto as Exhibit A are true and correct copies of printouts from the United States Patent and Trademark Office ("U.S.P.T.O.") website evidencing PEI's ownership of these trademarks. All of the registrations set forth in Exhibit A are valid, subsisting, unrevoked and uncancelled. Additionally, Registration No. 2,324,681 is incontestable. PEI also owns common law rights in the 360° trademark. PEI's registered and common law trademark rights in the 360° trademark are collectively referred to as the "360° Marks." PEI has sold products under the 360° Marks since at least 1993, and the 360° Marks are famous and widely-recognized brands.

3. PEI also owns trade dress rights in the bottle in which the 360° perfume is sold. In order to build customer recognition, PEI has used the same packaging for the 360° perfume. PEI sells four styles of the 360° perfume, White, Grey, Blue and Red. All of the packaging for the White, Grey, Blue and Red 360° perfume includes, but is not limited to: (a) a long, thin, cylindrical outer-packaging; (b) a thin ring of a different color from the rest of the outer-packaging approximately one inch from the top of the cylinder; (c) the 360° trademark placed approximately one inch below the ring; (d) a description of the perfume specifications at the base of the outer-packaging; (e) a long, thin, cylindrical bottle design; (f) a thick ring of brushed or polished silver at the top of the cylindrical bottle; and (g) a round, glass ball covering the perfume dispenser at the top of the bottle. In addition, the glass for the Blue 360° perfume bottle and dispenser ball cover is blue; the glass for the Red 360° perfume bottle and dispenser ball cover is red; the glass for the Grey 360° perfume bottle and dispenser ball cover is clear with aqua colored liquid; and the glass for the White 360° perfume bottle and dispenser ball cover is clear with yellow liquid (all of the foregoing design elements are collectively referred to as the "360° Trade Dress"). PEI has sold products under the 360° Trade Dress since at least 1993. The 360° Marks and 360° Trade Dress are collectively referred to as the "360° Intellectual Property." Attached hereto as <u>Exhibit B</u> are true and correct copies of photographs of the 360° Intellectual Property.

4. PEI, by itself and through its licensees, is a leader in the design, marketing and distribution of a wide variety of apparel, shoes, accessories and fragrances for men and women, including fragrances and personal care products for men and women, namely perfumes, eau de toilette, body lotions, bath and shower gels, after shaves, after shave balm, and deodorants (the "360° Products") sold under and/or in connection with the 360° Intellectual Property. PEI advertises and sells the 360° Products through department stores, independent retailers and PEI's own retail stores in the United States and more than forty-five other countries, as well as through its internet website at www.perryellis.com.

5. For more than twenty-five years, PEI's reputation and distinctive image have been consistently developed across an expanding number of products, as well as across both domestic and international markets. PEI has carefully built its reputation by, among other things, adhering to strict quality control standards and its commitment to customer service. As such, the 360°

Products are manufactured pursuant to specific, stringent guidelines. In addition, PEI spends millions of dollars annually to advertise and promote the 360° Products and 360° Intellectual Property, worldwide.

6.  As a result of PEI's extensive marketing and promotional efforts, as well as the high quality of the 360° Products, the 360° Products have achieved an outstanding reputation among consumers. The 360° Marks and 360° Trade Dress have become well and favorably known in the industry and to the public as the exclusive source of the 360° Products, and have come to symbolize the goodwill and reputation for excellence of 360° Products. PEI's and its licensees' marketing efforts, combined with its attention to quality and construction, have resulted in one hundred and forty-five million dollars of sales in the 360° Products since 2004, worldwide. PEI's continuous and broad use of the 360° Marks and 360° Trade Dress has expanded their renown and enabled PEI to achieve fame and celebrity in the fragrance product market. PEI intends to continue its use of the 360° Intellectual Property in the future.

7.  Defendants, without authorization or license from PEI, have used, reproduced, copied and/or infringed the 360° Intellectual Property in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell infringing copies of the 360° Products under the label "365 Days" (the "Infringing Products"). PEI originally learned that a company named Perfume Americana Wholesale, Inc. ("Perfume Americana") was selling Infringing Products at its storefront at 1216 Broadway, New York, New York 10001. PEI went to Perfume Americana's retail location at 1216 Broadway and purchased two bottles of Infringing Products, one each of men's and women's perfume. When PEI initially asked the salesman for "365", he immediately reached for PEI 360°. PEI asked again for "365", and the salesman went to the other side of the store and obtained two bottles of the Infringing Products. When PEI inquired who made the "365" perfume, the salesman stated that it was a "new private company" with a "private designer." PEI purchased the two bottles for $10.00 apiece.

8.  Attached hereto as <u>Exhibit C</u> are true and correct copies of photographs of the Infringing Products. Both the external packaging and the bottling for the Infringing Products is identical to that for genuine 360° Products. Defendants sell four styles of Infringing Products,

NY 238347863v1 4/17/2007

White, Grey, Blue and Red. All of the packaging for the Infringing Products includes, but is not limited to: (a) a long, thin, cylindrical outer-packaging; (b) a thin ring of a different color from the rest of the outer-packaging approximately one inch from the top of the cylinder; (c) the 365 Days trademark placed approximately one inch below the ring; (d) a description of the perfume specifications at the base of the outer-packaging; (e) a long, thin, cylindrical bottle design; (f) a thick ring of brushed or polished silver at the top of the cylindrical bottle; and (g) a round, glass ball covering the perfume dispenser at the top of the bottle. In addition, the glass for the Blue Infringing Product bottle and dispenser ball cover is blue; the glass for the Red Infringing Product perfume bottle and dispenser ball cover is red; the glass for the Grey Infringing Product perfume bottle and dispenser ball cover is clear with aqua colored liquid; and the glass for the White Infringing Product perfume bottle and dispenser ball cover is clear with yellow liquid.

9. The Infringing Products are not genuine 360° Products bearing the 360° Intellectual Property. PEI did not manufacture, inspect or package the Infringing Products, and did not approve the Infringing Products for sale and/or distribution.

10. On October 4, 2006, PEI sent a cease and desist letter to Perfume Americana. Perfume Americana responded on October 6, 2006, by identifying Defendants as its supplier. Over the next several months, PEI sought and obtained incomplete documentation evidencing some of Defendants' infringement. PEI attempted to settle this matter with Defendants to no avail.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 17, 2007, in Miami, Florida.

_____
Geri L. Mankoff